```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                 EASTERN DISTRICT OF OKLAHOMA

LACY JO TUBBY,                  )
                                )
         Plaintiff,             )
                                )
v.                              )   Case No. CIV-17-472-JHP-KEW
                                )
COMMISSIONER OF SOCIAL          )
SECURITY ADMINISTRATION,        )
                                )
         Defendant.             )
```

**REPORT AND RECOMMENDATION**

Plaintiff Lacy Jo Tubby (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 38 years old at the time of the ALJ's latest decision. Claimant completed her high school education. Claimant has worked in the past as a factory work/packing/quality control. Claimant alleges an inability to work beginning November 22, 2005 due to limitations resulting from back problems and depression.

### Procedural History

On March 3, 2006, Claimant protectively filed for disability

3

insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On March 25, 2008, Administrative Law Judge ("ALJ") Gene M. Kelly conducted an administrative hearing. On October 10, 2008, the ALJ issued an unfavorable decision. On February 11, 2009, the Appeals Council denied review. On September 13, 2010, this Court reversed the decision and remanded the case.

On June 9, 2011, ALJ Osly Deramus conducted a hearing on remand. He also issued an unfavorable decision on August 11, 2011. Again, the decision was reversed by this Court and the case remanded.

On January 23, 2014, ALJ Doug Gabbard conducted a third hearing. He issued an unfavorable decision on April 18, 2014. It, too, was reversed on appeal to this Court on September 29, 2015 and the case was once again remanded.

On June 21, 2016 and April 18, 2017, the fourth and fifth hearings were held, respectively, before ALJ Christopher Hunt. An unfavorable decision was entered on August 25, 2017. Claimant took a direct appeal to this Court. 20 C.F.R. §§ 404.984, 416.1484.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential

evaluation. He determined that while Claimant suffered from severe impairments, she retained the residual functional capacity ("RFC") to perform light work with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to reach a proper RFC determination; and (2) finding at step five that Claimant could perform jobs.

## RFC Determination

In his latest decision coming on for review, the ALJ determined Claimant suffered from the severe impairments of failed laminectomy syndrome, degenerative disc disease, asthma, obesity, major depressive disorder, and generalized anxiety disorder. (Tr. 863). The ALJ concluded Claimant retained the RFC to perform light work. In so doing, the ALJ determined Claimant could lift 20 pounds occasionally and ten pounds frequently; stand or walk for four hours in an eight hour workday; sit for six hours in an eight hour workday; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. She was unable to climb ladders, ropes, or scaffolding. Claimant needed to avoid dangerous machinery and unprotected heights; was limited to a work environment where she would have no more than a normal level of exposure to gases, fumes, dust, noxious odors, mists, poor ventilation - that which is

normally found in an office or commercial building. Claimant was limited by the ALJ to simple, repetitive, routine tasks, with occasional contact with co-workers, supervisors, and the general public. Claimant had a limited ability to read, write, and use numbers. (Tr. 867).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of small products assembler, conveyor line bakery worker, and bottling line attendant, all of which were found to exist in sufficient numbers in the national and regional economies. (Tr. 882). As a result, the ALJ found Claimant was not under a disability from November 22, 2005, the alleged onset date, through September 30, 2010, the date last insured. Id.

Claimant contends the ALJ's RFC was not supported by substantial evidence based upon several sub-issues. Claimant first asserts that the ALJ improperly evaluated the opinion of Dr. William Willis, one of Claimant's primary treating physicians who had treated Claimant since 2005. On March 6, 2008, Dr. Willis authored a medical source statement. He determined Claimant could sit for 20 minutes at a time and one hour in an eight hour workday; stand for ten minutes at a time and 30 minutes in an eight hour workday; walk for ten minutes at a time and for one hour in an eight hour workday and did not need an assistive device to stand or walk. Dr.

Willis further found Claimant could occasionally lift/carry up to ten pounds; had limitations in the use of her lower extremities; could occasionally push/pull and reach with her upper extremities but rarely work in an extended position, work above shoulder level, or work overhead, with the notation that such activity caused Claimant pain. Claimant's use of her hands for grasping, fingering, and fine manipulation was not limited. Dr. Willis also estimated Claimant could never squat, climb ladders or scaffolds and rarely bend, crawl, stoop, crouch, kneel, balance, twist, climb stairs, or climb an incline. (Tr. 335-36).

Dr. Willis inserted "N/A" in the area of the evaluation form which included environmental restrictions, which this Court interprets as a finding of no limitations in that area. The primary diagnoses cited by Dr. Willis for his findings were herniated discs at L5-S1 and L4-L5, noting surgery in May of 2006, failed physical therapy, failed L-5E1 x 2, and TENS unit "used when needed (doesn't help with back - does help with leg)". (Tr. 337).

Dr. Willis found Claimant's pain to be consistent with her impairments, noting that the severity of pain increased with "functional overlay" and "sudden changes or extremes in temperature and/or humidity." The severity of Claimant's pain was estimated by Dr. Willis to be "mostly severe" and "rarely intractable and/or control resistant", with the pain's frequency being "chronic" and

"continuous." Analgesics "help - but not control" Claimant's pain. (Tr. 338).

Dr. Willis also determined that Claimant's pain impaired her concentration and memory and stress tolerance. It also interfered with Claimant's ability to interact with others, maintain regular attendance, function independently, behave in an emotionally stable manner, maintain an acceptable working pace without an unreasonable number or length of rest periods, and complete a normal workday or week without interruptions from pain. In Dr. Willis' opinion, the combination of Claimant's impairments, pain, and non-exertional limitations would interfere with Claimant's sustained work activity. (Tr. 339).

In the narrative remarks on the source statement, Dr. Willis stated that

> This patient has complied with all treatment plans/surgical evaluation/post [surgical] recommendations. She continues to require narcotic _____ – and still is unable to perform even low impact functions because of the chronic pain.

(Tr. 339).

The ALJ found that Dr. Willis' source statement was

> inconsistent with the testimony of the claimant in key aspects. The claimant alleges significant limitations in the use of her hands but Dr. Willis does not find claimant's hands limited for grasping, fingering/fine manipulation. The claimant is alleging in her testimony that she needs a cane, but in March 2008, Dr. Willis is

> saying in his opinion she does not need one. The claimant is alleging that she has to elevate her legs but Dr. Willis in his medical opinion stated that she did not need to elevate her legs either. The functional limitations assessed by Dr. Epstein are inconsistent with those found by Dr. Willis. The undersigned does not accord Dr. Willis's medical opinion controlling weight.

(Tr. 870).

Later in the decision, the ALJ makes further comment concerning the reliability of Dr. Willis' opinions. He writes

> The hearing testimony of the claimant is not fully consistent with the 2008 medical opinion of Dr. Willis, and the later records differ in key way (sic) with the statements made by Dr. Willis in his medical opinion. Dr. Epstein reviewed the totality of the medical evidence of record and his conclusion is that the claimant has the residual functional capacity for a reduced range of light work. On or before the date last insured there are not functional limitations that relate to weakness or sensory deficits, or disturbances in gait that are compatible with the functional limitations found by Dr. Willis, and the undersigned gives his medical opinion little weight. Dr. Epstein testified that the EMG in the record does not indicate radiculopathy, and that the MRIs define anatomical issues, but do not define functional capacity. Dr. Epstein indicated that functional limitations and/or pain do not always coincide with imaging findings. The undersigned gives greater weight to the medical opinion of Dr. Epstein, and ultimately adopts his medical opinion.

(Tr. 871).

This Court should also note that the ALJ found Claimant's testimony on limitation to be "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 868).

This Court does not typically recite verbatim extensively from the ALJ's decision. In this instance, the recitation was set forth to demonstrate the fallacy and inconsistency in his rejection of Dr. Willis' opinions.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing

10

performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ essentially denied giving Dr. Willis' opinion as a treating physician "controlling weight" because it was not as restrictive as Claimant's testimony of his physical limitations. At the same time, he rejected Claimant's testimony of limitation as not be "entirely consistent with the medical evidence and other evidence in the record. . . ." This analysis defies basic logic.

The ALJ cannot have it both ways in assessing the opinion evidence of a treating physician. The <u>Watkins</u> analysis must be followed in order to insure that proper evaluative tools are utilized before the preferred testimony of a treating physician is rejected. The ALJ failed to accomplish this requirement in his analysis. Moreover, in adopting the opinion of Dr. Epstein, the ALJ expressly stated that Dr. Epstein "reviewed the totality of the medical evidence of record" to arrive at his conclusion. If this formed a legitimate basis for preferring a consultative examiner over a treating physician, a consultative examiner's opinion would always be preferred over that of a treating source. The ALJ next states that limitations are not justified based upon "weakness or sensory deficits, or disturbances in gait" because the record does not support such a finding, suggesting Dr. Willis' limitations were based upon such findings. The primary basis for Dr. Willis' findings was pain associated with movement - pain which required treating with narcotics. The ALJ does not address this issue in relation to Dr. Willis' functional analysis. The ALJ also concludes that "Dr. Epstein indicated that functional limitations and/or pain do not always coincide with imaging findings." This suggests that objective testing does not always indicate the level of limitation or pain. In that event, it was incumbent upon the ALJ to recontact Dr. Willis to ascertain the basis for the level of limitation to

which he attested. Indeed, other medical evidence and assessments in the record lend at least partial support for the level of limitation found by Dr. Willis. (Tr. 374-75, 566-68, 1240-41). On remand, the ALJ shall reassess the opinion of Dr. Willis and recontact him, if required, to ascertain further information on his findings.

Claimant also takes issue with the ALJ's assessment of her mental impairments. The ALJ's assessment of Dr. Daniel Lonowski, who testified at the administrative hearing, as well as the evaluation of Dr. Gordon's opinions are well-supported in the decision. On remand, the ALJ should assess, however, whether his re-evaluation of the effects of Claimant's pain would require a re-evaluation of Dr. Gordon's admonition that Claimant's anxiety and depression would be exacerbated by an increase in her pain. (Tr. 1357).

Claimant also challenges the ALJ's credibility assessment of her testimony without offering specific deficiencies in the evaluation. A re-evaluation to Claimant's credibility should occur in conjunction with the reassessment of Dr. Willis' testimony, since the credibility of Claimant's statements reflected upon the weight afforded to Dr. Willis' opinions.

**Step Five Analysis**

Claimant contends the ALJ's hypothetical questioning of the vocational expert did not include all of her limitations because they were based upon a flawed RFC.  Since the ALJ must reassess Dr Willis' opinions, the RFC may change.  On remand, the ALJ shall reformulate his hypothetical questions posed to the vocational expert to coincide with any changes to the RFC.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied.  Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED** and the case be **REMANDED** for further proceedings.  The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 14th day of March, 2019.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

15